IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for
Silverton Bank, N.A.,

    Plaintiff,

      v.

TOM A. BRYAN, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2790-TWT

## OPINION AND ORDER

This is an action by the Federal Deposit Insurance Corporation against the officers and directors of a failed bank.  It is before the Court on the motions for summary judgment regarding insurance coverage.

### I. Background

The Federal Deposit Insurance Corporation (the "FDIC") and all of the individual Defendants seek a declaration that coverage exists for the FDIC's claims against the former directors and officers of Silverton Bank under a primary Directors and Officers Liability Insurance Policy issued by co-defendant Federal Insurance Company and an excess policy issued by Westchester Fire Insurance Company that follows the insurance provided by Federal. The Defendant Westchester contends that

it has no duty to provide coverage under an excess Directors and Officers Liability Insurance Policy it issued to Silverton Financial Services, Inc., the parent company of Silverton Bank, N.A. with respect to the underlying claims by the FDIC against Silverton's former directors and officers. The individual Defendants also allege claims for breach of the insurance contract, and the Defendant Brock Fredette asserts a claim for breach of the duty of good faith and fair dealing.

In its Complaint, the FDIC as receiver of the now insolvent Silverton, asserts various claims against the former directors and officers of Silverton. The FDIC alleges that Silverton's former directors and officers engaged in corporate waste, negligence, gross negligence, and breach of fiduciary duty with respect to the management and assets of the bank. The FDIC also seeks declaratory relief against Defendants Federal and Westchester for insurance coverage under Silverton's Directors and Officers Liability Insurance Policies.

Silverton's primary directors and officers insurance policy was issued by Federal as the Executive Liability and Indemnification Coverage part of its Policy Number 6803-6886 ("Federal Policy"), for the policy period from March 9, 2009 through March 9, 2010. Westchester issued Excess Directors and Officers Liability Policy No. G24063616 001 (the "Westchester Policy") to Silverton for the policy period from March 9, 2009 through March 9, 2010. The Westchester Policy provides

that Westchester will pay for loss by reason of exhaustion of the underlying policies, "subject to i) the terms and conditions of the Followed Policy as in effect the first day of the Policy Period; . . ."

In 2008, Silverton Financial began negotiating with Federal to renew the directors and officers liability insurance for Silverton Bank for 2009-2010. Earl Howell, Silverton's chief operating officer, was the person at Silverton who was primarily responsible for obtaining directors and officers insurance for 2009-2010. Silverton also enlisted the assistance of Thomas Zerfoss at Silverton Insurance Services LLC to obtain directors and officers insurance for 2009-2010. Zerfoss was the insurance agent for Silverton. Silverton Insurance was a 60% owned (75% voting controlled) subsidiary of Silverton Financial. On January 21, 2009, Federal issued an insurance proposal to Silverton for directors and officers insurance that included a Regulatory Exclusion Endorsement (the "Federal Proposal").  The Federal Proposal listed a Regulatory Exclusion Endorsement Form 17-02-1228 as a required endorsement which excluded coverage for loss due to any claims by a state or federal regulatory agency.  During negotiations for the primary directors and officers insurance policy, Howell reported to the Silverton board that Federal had come back with a price and that there might not be any regulatory coverage included in the policy because the Federal Policy would have a regulatory exclusion.  Upon receipt of the

Federal Proposal, Zerfoss, on behalf of Silverton, called Federal's underwriter to complain about the regulatory exclusion and pleaded with the underwriter to remove it, but Federal would not remove the exclusion. Zerfoss sent the proposal to Howell and informed him of the regulatory exclusion and discussed the language of the exclusion with Howell. Federal at all times maintained that the exclusion would become part of the policy and Zerfoss' attempts to have it removed became a dead issue. On March 3, 2009, Zerfoss emailed Federal's underwriter stating: "Please renew per your latest proposal," which referred to the January 21, 2009 proposal, but with a $50,000 reduction in Federal's premium.  That same day Federal issued an insurance binder, which bound coverage for Silverton, and which referenced as a term of the policy Regulatory Exclusion Endorsement Form 17-02-1228 (3/04 ed.).

Because Federal reduced the amount of coverage it was offering for 2009-2010 to $5 million from the $10 million in the 2008-2009 policy period, Silverton's board of directors wanted to obtain excess directors and officers insurance.  Zerfoss contacted Philip Collins at Crump Insurance Services, Inc., a wholesale broker, to obtain an additional $5 million of directors and officers insurance coverage.  Crump served as the intermediary between Zerfoss, as Silverton's agent, and Westchester. By email dated March 9, 2009, Crump provided Westchester with a copy of the Federal Binder, referencing the regulatory exclusion. The next day, Westchester issued its

Excess Directors and Officers Liability Policy, which provides that it is subject to "the terms and conditions of the [Federal] Policy as in effect the first day of the Policy Period ...." On March 26, 2009, Silverton issued a check for payment of the premiums of the Federal and Westchester policies.

Westchester issued Excess Liability Insurance Policy, No. G24063616 001 (the "Westchester Policy"), to Silverton, effective March 9, 2009 through March 9, 2010 (the "Policy Period"). The Westchester Policy provided Excess Directors and Officers Liability coverage in an aggregate amount of $5 million for all loss under all coverages combined in excess of the $5 million limits of the "Followed Policy," for covered claims first made against the insureds during the Policy Period. The "Followed Policy" is identified as Executive Liability and Indemnification Form No. 17-02-1149, issued by Federal as the directors and officers coverage part of its Policy Number 6803-6886. The Westchester Policy also provides that Westchester will pay for loss by reason of exhaustion of the underlying policies, "subject to i) the terms and conditions of the Followed Policy as in effect the first day of the Policy Period; . . ." The Federal Policy issued on April 1, 2009, with an inception date of March 9, 2009, the same date as the Westchester Policy. In issuing its policy, Federal omitted several endorsements, including the Regulatory Exclusion Endorsement.

On May 1, 2009, Federal's underwriter noticed that the regulatory exclusion had been left off the Federal Policy. The same day, Federal forwarded the regulatory exclusion to Zerfoss at Silverton Insurance Services. Zerfoss did not register any objection to the regulatory exclusion. Later that day, the Office of the Comptroller of the Currency closed Silverton Bank and appointed the FDIC as receiver. In March 2010, the FDIC sent demand letters to Silverton Bank's former directors and officers. After the directors and officers tendered the demand to Federal, Federal denied coverage based on the regulatory exclusion. By letter dated March 15, 2011, counsel for the Defendant Brock Fredette, an officer and/or director, demanded that Westchester tender its policy limits for the indemnification of, and agree to advance all reasonable costs incurred in the defense of, a claim by the FDIC against Mr. Fredette. By letter dated May 11, 2011, Westchester reserved its rights in response to the letter from counsel for Mr. Fredette.

Federal contends that the undisputed facts show that Federal and Silverton agreed the Federal Policy would contain the regulatory exclusion. Westchester contends that the FDIC's claims against the individual Defendants are not covered by the Westchester Policy for the following reasons: (1) a regulatory exclusion incorporated into the Westchester Policy expressly bars coverage for claims by the FDIC; (2) if the regulatory exclusion was not included in the policies, the Westchester

Policy must be reformed to include the exclusion; and (3) alternatively, the Westchester Policy must be rescinded because the policy was issued pursuant to a material misrepresentation, omission, and/or incorrect statement that the Federal Policy would contain a regulatory exclusion.

## II. Summary Judgment Standard

Summary judgement is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgement as a matter of law.[1]  The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant.[2]  The party seeking summary judgement must first identify grounds that show the absence of a genuine issue of material fact.[3] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[4]

---

[1]      Fed. R. Civ. P. 56(c).

[2]      Adickes v. S.H. Kress and Co., 398 U.S. 144, 158-159 (1970).

[3]      Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[4]      Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. Discussion

Although Federal and Westchester acknowledge that the Federal Policy does not include a  regulatory exclusion, the insurers nevertheless deny coverage alleging that there was an agreement with Silverton to include the regulatory exclusion in the Federal Policy. The FDIC argues that the Court should grant the FDIC's motion for summary judgment – and deny the motion for summary judgment filed by Federal Insurance Company – because neither the binder issued on March 9, 2009 by Federal, the attempted amendment to the insurance policy on May 1, 2009, nor any alleged agreement to include the regulatory exclusion as a term or condition of the insurance policy complies with the strict requirements of 12 U.S.C. §§ 1821(d)(9)(A) and 1823(e) ("Section 1823(e)"). The statute provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement– (A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.[5]

---

[5]    12 U. S. C. § 1823(e)(1); see also D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 460-62 (1942).

Accordingly, in a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against the FDIC any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.[6] Section 1823(e) prevents a party from diminishing the FDIC's interest in an asset by relying on an agreement that was not contained in the bank's records. Under Eleventh Circuit precedent, the Federal Policy and Westchester Policy were assets of the bank.  The Eleventh Circuit has held that Section 1823(e) applies to "any type of asset" and that Section 1823(e) applies to virtually every case where a federal banking regulatory agency confronts an agreement not found in the bank's records.[7] The alleged agreement concerning the regulatory exclusion clearly tends to diminish the FDIC's interest in its claims against the directors and officers because the exclusion will diminish any potential recovery by the FDIC in the event that it prevails.

The insurance companies argue that the Federal Binder contained a written agreement to include the regulatory exclusion. The FDIC does not dispute that the

---

[6]     Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir. 1991).

[7]     Twin Constr. Co. v. Boca Raton, Inc., 925 F.2d 378, 382 (11th Cir. 1991); Baumann, 934 F.2d at 1516.

insurance binder Federal provided Silverton made reference to a regulatory exclusion.
This fact, however, is inconsequential because the insurance binder states that "[t]his
binder shall terminate automatically upon the expiration shown above, or upon the
issuance of the policy, whichever comes first."   The Federal Policy was issued on
April 1, 2009.  Accordingly, by its very own terms, the insurance binder automatically
terminated on April 1, 2009. Consequently, in the days and weeks that followed April
1, 2009, there was no written document in Silverton's official records indicating that
the insurers could deny coverage for claims, like those asserted by the FDIC here,
based on the  regulatory exclusion.  Rather, the only document in effect in Silverton's
records was the Federal Policy, which indisputably did not contain the regulatory
exclusion. When Silverton was closed on May 1, 2009, the information available to
the regulators was the following: (i) the binder explicitly stating that it could be
modified by Federal and explicitly providing that it terminated upon issuance of the
Federal Policy; and (ii) the Federal Policy that did not contain a  regulatory exclusion.
Federal and Westchester have the burden to prove that the alleged agreement was not
only in the bank's records, but that it otherwise satisfies the requirements of Section
1823(e).[8]

---

[8]      See FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1516 (11th Cir. 1984);
see also FDIC v. Oldenburg, 34 F.3d 1529, 1551 (10th Cir. 1994) (the party relying
on an alleged agreement has the burden of proving that it satisfies Section 1823(e));

The insurance companies have no evidence to satisfy any of the Section 1823 statutory requirements.  At most, Federal and Westchester could demonstrate that the regulatory exclusion, which was sent well after the policy was issued to Silverton, is a "writing" under Section 1823(e).  They cannot, however, show that Silverton executed an alleged agreement on the regulatory exclusion.[9] Likewise, the insurance companies cannot show that the regulatory exclusion was approved by Silverton's board of directors.   And they cannot show that any alleged agreement on the regulatory exclusion was continuously maintained in Silverton's official records. These failures are fatal to the insurers' claim that the  regulatory exclusion was part of the policy. The most that Federal and Westchester can show is that the terminated and ineffective insurance binder mentions the  regulatory exclusion and that on May 1, 2009, an endorsement containing the  regulatory exclusion was sent to a non-bank employee, who Federal contends was the bank's agent.  Even if these allegations are assumed to be true, they create no genuine issue of material fact because they still fail to comply with the requirements of Section 1823(e).

_____

Caires v. JP Morgan Chase Bank, 745 F. Supp. 2d 40, 53 (D. Conn. 2010) (proponent of an agreement covered by Section 1823(e) must plead compliance with the rules).

[9]    See Twin Constr. Co. v. Boca Raton, Inc., 925 F.2d 378, 384 (11th Cir. 1991) (holding that "executed" means the bank has "signed" the agreement).

Federal and Westchester attempt to limit the application of Section 1823(e) by arguing that it only applies to "regular banking transactions," like loans and loan-related transactions.  The insurance companies contend that the purchase of directors and officers liability insurance is not a regular banking transaction and, as such, Section 1823(e) does not apply here.  This argument fails on at least three levels. First, it  ignores the plain language of the statute, which is unqualified – by its own terms, it applies to any "agreement which tends to diminish or defeat the interest of the [FDIC] in any asset[.]" Second, even assuming there was some limitation (which there is not), Federal and Westchester  cite no authority for the proposition that the purchase of directors and officers liability insurance is not a regular banking transaction. Significantly, the Eleventh Circuit has held that a "regular banking transaction" includes the purchase of an asset.[10]  The Federal Policy falls under the Eleventh Circuit's broad definition of "any type of asset," and, as such, Section 1823(e) applies to the purchase of this asset. Third, the Eleventh Circuit, together with other courts, has held that insurance contracts of various types are "assets" under

---

[10]    See Bufman Organization v. FDIC, 82 F.3d 1020, 1025 (11th Cir. 1996) (holding that Section 1823(e) barred plaintiff's securities fraud claim relating to a stock offering).

Section 1823(e).[11] For example, a federal district court in Georgia applied Section 1823(e) to a disability insurance policy.[12]  Courts have also applied Section 1823(e) to fidelity bond claims.[13]

In an effort to save the  regulatory exclusion, Federal contends that its policy was amended on May 1, 2009 (the day Silverton was closed).   This contention fails because any amendment of the Federal Policy would require an agreement to amend and such agreement would have to comply with the strict requirements of Section 1823(e).  Federal cannot point to any evidence that would support the existence of an agreement to amend the terms of it policy, much less evidence of an agreement that complied with the requirements of Section 1823(e).

Westchester claims that Silverton's "insurance broker" misrepresented that the Federal Policy would contain a regulatory exclusion and, absent the alleged misrepresentation, Westchester contends it would not have issued its policy. Westchester seeks rescission of its policy based on these allegations. While rescission may be proper when one party has been induced to agree to a contract based on the

---

[11]    See, e.g., FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1515 (11th Cir. 1984) (applying Section 1823(e) to credit life insurance).

[12]    Cochran v. RTC, 831 F. Supp. 877, 879-80 (M.D. Ga. 1993).

[13]    See FDIC v. Great Am. Ins. Co., 607 F.3d 288, 293 (2d Cir. 2010); FDIC v. Oldenburg, 34 F.3d 1529, 1553-54 (10th Cir. 1994).

other party's misrepresentations,[14] it is unavailable here. Fraudulent inducement or reliance on a misrepresentation is barred by Section 1823(e).  As with the claim for reformation, the statute bars Westchester's rescission claims because – in order to prevail – Westchester must prove a side or secret agreement that meets the recording requirements of the statute, but has instead only alleged a misrepresentation that indisputably went undocumented in the bank's official records.

Finally, the "No Changes Without Consent Condition" in the Westchester Policy required Silverton to notify Westchester of any changes to "the terms, conditions, exclusions or limitations of ***the Followed Policy***." (emphasis added). The Westchester Policy defines the "Followed Policy" as the "Executive Liability & Indemnification Form # 17-02-1149" issued by Federal. Westchester contends that there was a change in "the policy" because the Federal Policy differed from the binder. Westchester claims that this alleged "change" triggered the "No Changes Without Consent Condition" in the Excess Policy.  Based on the plain language of this condition, Silverton was only required to notify Westchester if there were changes to the "Followed Policy," which by Westchester's own admission is the Federal Policy.

---

[14]     See Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1583-84 (10th Cir. 1993) (citing D. Dobbs, *Handbook on the Law of Remedies* § 9.4 at 618)).

A change between the binder and the Federal Policy is simply not a change to the "Followed Policy."

## IV. Conclusion

For the reasons set forth above, the Defendant Westchester Fire Insurance Company's Motion for Summary Judgment [Doc. 289] is DENIED. The Plaintiff Federal Deposit Insurance Corporation's Motion for Summary Judgment [Doc. 292] is GRANTED as to the declaratory judgment claims against Federal and Westchester. The Defendant Federal Insurance Company's Motion for Summary Judgment [Doc. 293] is DENIED.

SO ORDERED, this 18 day of March, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge